## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**MINERVA CURTIS,**

     Plaintiff,

v.                                                          2:24-cv-84-JLB-NPM

**BURLINGTON STORES, INC.**
and **JANE DOE,**

     Defendants.

---

### ORDER

     Plaintiff Minerva Curtis allegedly slipped and fell on a liquid substance at defendant Burlington Stores, Inc.'s premises. (Doc. 1-1). On that basis, she initiated this action in state court against Burlington and incorporated allegations against a fictitious, store-manager defendant. Burlington removed the case based on diversity jurisdiction. Curtis now seeks two forms of relief. First, she moves to remand the case back to state court, arguing Burlington's removal was untimely. (Doc. 13). Second, she moves to amend her complaint to name and join a non-diverse store manager, which would destroy diversity and compel remand. (Doc. 17). Neither request has merit, and so the case will remain here and proceed against Burlington only.

## I.    Factual and Procedural History

The incident at issue occurred on February 24, 2022. Roughly ten months later, on December 12, 2022, Curtis sent Burlington a settlement demand for $250,000. The demand outlined and attached medical bills totaling over $130,000. (Docs. 1-5, 1-6). With no pre-suit resolution, Curtis sued Burlington in state court on March 21, 2023. The complaint asserted an amount in controversy of $50,000—the jurisdictional minimum to proceed in Florida's circuit, rather than county, courts. (Doc. 1-1). A few weeks later, on April 7, 2023, Curtis sent Burlington another demand letter that reiterated the $250,000 demand and included supplemental medical bills of around $30,000. (Doc. 13-1).

Fast forward a few months, and a default was entered against Burlington because it had not responded to the complaint. But as it turned out, Curtis failed to properly serve Burlington. Nevertheless, Burlington voluntarily appeared on October 4, 2023. (Doc. 1-7 at 22). The same day, Curtis filed an amended complaint adding the fictitious-store-manager allegations. Two days later, on October 6th, the state court adopted an agreed order withdrawing the default against Burlington and establishing Curtis's amended complaint as the operative pleading. (Doc. 1-2).

With the case finally underway, Burlington served Curtis with written discovery about the amount in controversy and asked whether she would stipulate that it did not exceed $75,000. (Doc. 16 at 3). Curtis implicitly rejected the requested

stipulation on December 26, 2023, by resending her prior demands and the accompanied medical bills. (Doc. 1 ¶ 8). Curtis later admitted that the controversy exceeds $75,000 (Doc. 1-4), and on January 25, 2024, Burlington removed the case.

## II.  Burlington's Timely Removal

A defendant may remove any civil action from state court to federal court if it could have been filed in federal court originally. 28 U.S.C. § 1441(a). Burlington invokes the court's diversity jurisdiction, which requires the plaintiff to be diverse in citizenship from every defendant and the amount in controversy to exceed $75,000, exclusive of costs and interest. 28 U.S.C. § 1332(a)(1); *Nat'l Loan Acquisitions Co. v. Pet Friendly, Inc.*, 743 F. App'x 390, 392 (11th Cir. 2018). If the initial pleading makes clear on its face the case is removable, then a defendant must file a notice of removal within thirty days of service of the pleading. 28 U.S.C. § 1446(b). Otherwise, a defendant must initiate removal within thirty days after receipt of some "other paper" from which defendant can ascertain the case is removable. 28 U.S.C. § 1446(b)(3).

Curtis's amended complaint does not facially establish a basis for removal, given it only asserts a $50,000 amount in controversy. *See Bell v. ACE Ins. Co. of the Midwest*, 2020 WL 5422832, *2 (M.D. Fla. Sept. 10, 2020) (stating that the complaint failed to put defendant on notice that the amount in controversy exceeded the federal jurisdictional threshold because "it only allege[d] damages in the amount

of the state court jurisdictional minimum"). Neither party disputes this point. The primary disagreement is what "other paper" triggered the thirty-day removal period.

The parties also agree that a pre-suit demand letter cannot trigger the removal period, so the December 12, 2022, demand letter—which was sent before Curtis filed suit—is off the table. Curtis instead believes the removal period began on October 6, 2023. She argues:

> [Burlington] was on notice as to the amount in controversy from April 7, 2023 when the post-suit demand letter was received. As such, [Burlington's] Notice of Removal is untimely as the thirty day removal provision began to run on October 6, 2023, the date [the] Amended Complaint was deemed filed.

(Doc. 13 at 6). Curtis apparently believes the April 2023 demand letter, which she sent to Burlington after she had filed suit—but before she had served process—somehow acquired "other paper" status when the improper-service issue was resolved by agreement on October 6th. She is mistaken.

Section 1446(b)(3) requires that, if an "other paper" is to trigger the removal period, the defendant must receive it *after* service or waiver of process. *Tipton v. Togom*, No. 3:23-cv-24671-TKW-HTC, 2024 WL 562734, *2 (N.D. Fla. Jan. 16, 2024) (internal citations omitted). "Receipt of the initial pleading occurs upon formal service of process." *Id.* "Thus, for an 'other paper' to trigger the removal period in § 1446(b)(3), the paper must be received by the defendant from the plaintiff after the defendant has been served." *Id.*; *see also Tesorero v. Indep. Specialty Ins. Co.*, No.

6:23-cv-1194-PGB-LHP, 2023 WL 5217177, *3 (M.D. Fla. Aug. 15, 2023) ("[F]or information contained in an 'other paper' to start the 30-day removal clock under § 1446(b)(3), a defendant must receive the 'other paper' after service of the initial pleading[.]").

Curtis's April 2023 demand letter was received by Burlington *before* it was joined to the action by service of process or waiver of same. "Thus, even if the demand letter could be characterized as being post-suit in the sense that it was sent after the original complaint was <u>filed</u>, it would still be a pre-suit demand letter for purposes of § 1446(b)(3) because it was sent before [Burlington was] served with an initial pleading[.]" *Tipton*, 2024 WL 562734, at *2 (emphasis original). Rather, the removal period was triggered on December 26, 2023, the date Curtis resubmitted to Burlington her demand letters and $160,000 in medical bills. Since Burlington removed the action precisely thirty days later, the removal was timely.

Having rejected Curtis's timeliness argument, we pause to reject any suggestion that the notice of removal did not properly allege complete diversity. It is undisputed that Burlington and Curtis are diverse.[1] And, for diversity purposes, the court ignores Doe defendants. 28 U.S.C. § 1441(b) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *Walker v. CSX Transp. Inc.*, 650 F.3d 1392, 1396 n.11 (11th Cir.

---

[1] Curtis is a Florida citizen and Burlington is not. (Doc. 1 ¶ 19; Doc. 25).

2011). Since, at the time of removal, the store manager was (and currently remains) fictitiously named, removal was proper.[2]

## III.   Leave to Name and Join a Store-Manager Defendant Is Not Warranted

Curtis seeks leave to join Lisa Maglott—Burlington's store manager—as a defendant. Maglott is a Florida citizen, and her joinder would defeat diversity and compel remand. *See Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1224 (11th Cir. 2013) ("Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant."). "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). This decision "is left to the sound discretion of the court." *Laposa v. Walmart Stores E. LP*, No. 2:20-cv-182-FTM-29NPM, 2020 WL 2301446, *2 (M.D. Fla. May 8, 2020) (citing *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992)).

Leave to amend a complaint is generally governed by Rule 15(a), which requires a court to freely grant leave when justice so requires. *See Exclusive Grp. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 2:22-cv-474-JES-

---

[2] Burlington's notice of removal argues that "Jane Doe" was fraudulently joined to defeat diversity. This argument was unnecessary. The use of fictitious-defendant allegations in a complaint does not serve to join anyone to the suit. *See Petite v. Lyft, Inc.*, 8:23-cv-939-CEH-SPF, 2023 WL 4033708, *1 (M.D. Fla. May 22, 2023) (observing that despite any John Doe allegations, the subsequently identified defendant would need to be joined pursuant to Rule 20).

NPM, 2023 WL 8597520, *6 (M.D. Fla. Dec. 12, 2023). But "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). And Curtis's proposed negligence claim against Maglott does not withstand such scrutiny.

"Under Florida law, a store manager is not liable for negligence 'simply because of his general administrative responsibility for the performance of some function of his employment—he or she must be actively negligent.'" *Contreras v. Walmart Stores E., LP*, No. 2:23-cv-208-SPC-NPM, 2023 WL 3740091, *2 (M.D. Fla. May 31, 2023) (quoting *White v. Wal-Mart Stores, Inc.*, 918 So. 2d 357, 358 (Fla. 1st DCA 2005)). So, to maintain a claim against a store manager, a plaintiff must allege and prove the store manager owed the plaintiff a duty and such duty was breached through personal fault, as opposed to technical or vicarious fault. *Contreras*, 2023 WL 3740091, at *2 (citing *White*, 918 So. 2d at 358). Curtis's claim against Maglott fails to meet this standard.

Curtis alleges Maglott "had a non-delegable duty to the general public to properly maintain [the] premises in a reasonably safe condition for the general

- 7 -

public."[3] (Doc. 17-1 ¶ 21). And, without any factual support, she includes a traditional laundry list of premises-liability theories that become "increasingly boilerplate as the list goes on." *Knouse v. Sam's E., Inc.*, No. 2:23-cv-1054-SPC-NPM, 2024 WL 1012972, *2 n.1 (M.D. Fla. Mar. 8, 2024). This list includes allegations that Maglott failed to maintain the premises in a reasonably safe condition and failed to correct or warn of a dangerous condition that she knew or reasonably should have known existed. (Doc. 17-1). Courts have routinely found such "formulaic recitation of the elements of a cause of action" do not adequately allege a store manager was "personally involved" or "actively negligent." *Contreras*, 2023 WL 3740091, at *2; *see also Knouse*, 2024 WL 1012972, at *2-3; *Watts v. Wal-Mart Stores E., LP*, 656 F. Supp. 3d 1363, 1368 n.4 (S.D. Fla. 2023); *Cruz v. Walmart Stores E., LP*, No. 2:22-cv-692-SPC-NPM, 2023 WL 1069693, *3-4 (M.D. Fla. Jan. 27, 2023); *Boyd v. Petco Animal Supplies Stores, Inc.*, No. 3:18-cv-639-J-32PDB, 2018 WL 4360621, *3 (M.D. Fla. Sept. 13, 2018) (allegations against store manager were "not specific and direct; rather, they are conclusory" and the plaintiff

---

[3] Curtis alleges Burlington had a "non-delegable duty" to reasonably maintain the premises. (Doc. 17-1 ¶ 11). "The non-delegable duty doctrine creates certain duties a business owner cannot delegate to an employee or independent contractor in order to escape liability." *Avila v. Walmart Stores E., LP*, No. 2:22-cv-723-SPC-NPM, 2023 WL 4082132, at *1 (M.D. Fla. June 20, 2023). Implicitly conceding that she wishes to advance a similarly passive, rather than active, negligence claim against Maglott, Curtis alleges that Maglott had the same duty that Burlington cannot delegate.

"has provided no facts demonstrating that [the store manager] played any role in [plaintiff's] injuries").

Conspicuously, the entire claim against Maglott is a copy-and-pasted recitation of the conclusory allegations against Burlington, altering only the defendant's name. So rather than "active negligence" or "personal involvement," the allegations against Maglott instead "suggest a theory of vicarious liability akin to a claim brought against an employer[.]" *Watts*, 656 F. Supp. 3d at 1368. But as noted above, such "vicarious" or "technical" fault does not give rise to a claim against a store manager. Consequently, "this case appears to be a run of the mill slip and fall case in which the store manager individually has no liability." *Contreras*, 2023 WL 3740091, at *3 (internal citations omitted).

Moreover, a store manager in a case like this is only liable for his or her "active negligence." Active negligence occurs when "the tort-feasor actually does something to harm the injured party[.]" *Ruiz v. Wendy's Trucking, LLC*, 357 So. 3d 292, 299 (Fla. 2d DCA 2023); *Nicholson v. Stonybrook Apartments, LLC*, 154 So. 3d 490, 494 (Fla. 4th DCA 2015). Significantly, active negligence is incongruent with premises liability, which courts have labeled inherently passive because the purported harm arises from "the tort-feasor's failure to do something to its property[.]" *Nicholson*, 154 So. 3d at 494; *see also Ruiz*, 357 So. 3d at 299 ("[T]he claims are more appropriately reviewed as being based on premises liability, which

involves passive negligence."); *Hix v. Billen*, 284 So. 2d 209, 210 (Fla. 1973) ("There is a distinction to be noted between active, personal negligence on the part of a landowner and that negligence which is based upon a negligent condition of the premises."). Given a store manager is personally liable only for active negligence, and premises-liability negligence is inherently passive, it follows then that a store manager cannot be held liable under a premises-liability theory.

Curtis's claim against Maglott is just that—premises liability.[4] She claims that because she was an invitee at the store, Maglott owed her a duty to reasonably maintain the premises, and Maglott breached that duty by, among other things, failing to correct or warn of a dangerous condition.[5] But, as previously noted, a *failure* to do something to one's property—which is the hallmark of premises liability—connotes passive negligence. Further, to the extent Maglott had any duty to maintain the premises, the duty stemmed entirely from her association with

---

[4] A premises liability claim is distinct from one of ordinary negligence because the defendant's duty to the plaintiff depends on the plaintiff's status as to the land (*i.e.*, invitee, licensee, or trespasser) and is predicated on an alleged defective or dangerous condition of the premises. *See Ruiz*, 357 So. 3d at 300. Conversely, in an ordinary-negligence case, "the defendant owes the plaintiff a duty of reasonable care, regardless of the relationship between the defendant and plaintiff," and the injuries "have no real relationship to the premises." *Id.* at 299-300 (citing *Nicholson*, 154 So. 3d at 492-94).

[5] Under Florida's premises liability doctrine, a landowner owes an invitee two distinct duties: (1) to warn of known dangers; and (2) to maintain the premises in a reasonably safe condition. *See Conner v. Marriott Hotel Servs., Inc.*, 559 F. Supp. 3d 1305, 1308 (M.D. Fla. 2021) (applying Florida law). The duty to maintain the premises includes detecting dangerous conditions, correcting them, and taking actions to eliminate foreseeable risks before they manifest themselves. *Id.* at 1310.

Burlington. In other words, but-for Maglott's employment, she would not owe any such duty. Thus, the alleged duty was not personal. *Cf. Ruiz*, 357 So. 3d at 299 (distinguishing between claims against a landowner for active, *personal* negligence and one based on premises liability); *Hix*, 284 So. 2d at 210 (same); s*ee also Watts*, 656 F. Supp. 3d at 1368 ("[W]ith regard to the personal fault . . . the [store manager] must have a personal duty towards the injured third party, breach of which specifically has caused this party's damages." (internal citations omitted)).

Ultimately, a claim can be maintained against a store manager only under ordinary-negligence principles for breach of a personal duty, as opposed to a vicarious one through her employment. In other words, the claim must not hinge on the individual's status as an employee. Curtis's proposed amendment does just that. Consequently, it would be futile.

While the analysis could stop there, we briefly address § 1447(e). When determining whether to grant a plaintiff leave to add a non-diverse defendant, courts typically consider several factors, including:

> the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for the amendment, whether the plaintiff will be significantly injured if the amendment is not allowed, and any other factors bearing on the equities.

*Dever v. Fam. Dollar Stores of Georgia, LLC*, 755 F. App'x 866, 869 (11th Cir. 2018)*; see also Laposa*, 2020 WL 2301466, at *2. No one factor is dispositive.

- 11 -

There is little doubt that defeating federal jurisdiction is the primary, if not the sole, purpose behind Curtis's effort to join Maglott to this action. Indeed, since the proposed allegations against Maglott are *identical* to those against Burlington, Curtis may obtain the same relief for the same reasons without joining Maglott as a party. *See Norvilus-Foreste v. Walmart Stores E., LP*, No. 2:23-cv-163-SPC-NPM, 2023 WL 4235460, *3 (M.D. Fla. June 28, 2023) ("Plaintiff can still move forward with her claim against Walmart without the store manager, and she can obtain full relief for her slip and fall from Walmart alone."). And while Curtis used Jane Doe allegations as a placeholder for the store manager in the state-court complaint, it was not until Burlington revealed an intent to remove this case that she served any written discovery directed to identifying the store manager. Finally, Curtis will not be prejudiced by Maglott's absence and is free to sue Maglott in state court. While this would result in parallel litigation, this concern is "likely to be present whenever a plaintiff in a removed case seeks to add a nondiverse defendant." *Gallegos v. Safeco Ins. Co. of Indiana*, No. CIV.A. H-09-2777, 2009 WL 4730570, *5 (S.D. Tex. Dec. 7, 2009).

Accordingly, Curtis's motion to remand (Doc. 13) and motion for leave to amend (Doc. 17) are **DENIED.** And instead, Curtis is directed to file an amended complaint by **August 16, 2024**, that removes all references to any Jane Doe defendant; as a general matter, fictitious-party pleading is not permitted in federal

court. *See Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020); *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Given the forthcoming amended complaint, Burlington's motion to dismiss (Doc. 7) is **DENIED without prejudice**. But when preparing the further amended complaint, Curtis should be mindful of the purported deficiencies identified in Burlington's motion and take appropriate steps to negate any basis for a Rule 12(b) motion in response.[6]

**ORDERED** on August 2, 2024

NICHOLAS P. MIZELL
United States Magistrate Judge

---

[6] Curtis's counsel is further advised that, since this action will remain here, she should familiarize herself with this court's local rules and avoid future citations to those of the Southern District. (*See* Doc. 13 at 9; Doc. 17 at 7).